## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

READY FOR THE WORLD INC.,
D/B/A READY FOR THE WORLD,

          Plaintiff,          CASE NO. 19-10062
                                  HON. DENISE PAGE HOOD

v.

MELVIN RILEY, JOHN EATON,
RENEE ATKINS, DANIEL DILLMAN,
JAN MARK LAND,

          Defendants.

_____/

## ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS [#19; #24; #26; #28; #30]

### I.    BACKGROUND

#### A. Procedural Background

On January 7, 2019, Plaintiff Ready for the World, Inc., d/b/a Ready for the World ("Ready for the World") filed a Verified Complaint against Defendants Melvin Riley ("Riley"), John Eaton ("Eaton"), Renee Atkins ("Atkins"), Daniel Dillman ("Dillman"), and Jan Mark Land ("Land") (collectively, "Defendants") alleging: Federal Trademark Infringement pursuant to 15 U.S.C. § 1114 (Count I); Federal Trademark Infringement pursuant to 15 U.S.C. § 1125(a) (Count II); Federal Trademark Dilution (Count III); Passing Off (Count IV); False Advertising (Count

V); Damages pursuant to 15 U.S.C. § 1117 (Count VI); Common Law Trademark Infringement and Unfair Competition (Count VII); and Violation of the Michigan Consumer Protection Act (Count VIII). (Doc # 1) Ready for the World filed a Motion for Temporary Restraining Order and Preliminary Injunction on January 18, 2019. (Doc # 4) The Court granted Ready for the World's Motion for Temporary Restraining Order on January 22, 2019 (Doc # 8) and granted its Motion for Preliminary Injunction on February 8, 2019 (Doc # 32).

Each Defendant filed a Motion to Dismiss (Doc # 19; Doc # 24; Doc # 26; Doc # 28; Doc # 30) and these Motions are currently before the Court. Responses (Doc # 33; Doc # 34; Doc # 35; Doc 36; Doc # 37) and Replies (Doc # 39; Doc # 43; Doc # 44; Doc # 45; Doc # 46) have been filed. A hearing on these Motions was held on May 15, 2019.

**B. Factual Background**

Ready for the World is a successful American R&B band from Flint, Michigan, that had numerous pop, soul, and dance hits in the mid-eighties. (Doc # 1, Pg ID 4) In 2008, Ready for the World, Inc. was formed by Riley, Eaton, Willie Triplett, Gordon Strozier, Gregory Potts, Gerald Valentine. (Doc # 1, Pg ID 4; Doc # 1-2) In 2010, Ready for the World registered a trademark with the United States Patent and Trademark Office for "Ready for the World" and the group was given the exclusive rights to the trademark for entertainment, namely, live performances by a

musical band. (Doc # 1, Pg ID 5; Doc # 1-3)  This trademark is currently active and is presently in use by Ready for the World, Inc.  The trademark is considered a famous mark within the meaning of 15 U.S.C. § 1125(c). (Doc # 1, Pg ID 7)  Further, the trademark is incontestable pursuant to 15 U.S.C. § 1065(c) and 15 U.S.C. § 1115(b). (*Id.*)

On February 18, 2015, Riley indicated to Ready for the World that in the future, he would only perform as the solo entity, "Melvin Riley." (Doc # 1, Pg ID 6; Doc # 1-4)  Ready for the World, Inc. executed a Shareholders Agreement in February 2018 that was endorsed and executed by all of the group's members except Riley, who refused to sign it. (Doc # 1, Pg ID 6; Doc # 1-5)  On February 18, 2018, Ready for the World's manager, Terry Harvey, contacted Riley and confirmed that Riley had left the group and would no longer perform with the other members. (Doc # 1, Pg ID 6; Doc # 1-6)  On October 3, 2018, Riley contacted Amanda Tilk of Groove Entertainment and Steve Seiden of Yapsody Entertainment and the Sycuan Casino via email and stated that he was no longer performing or touring with Ready for the World, but would instead be performing with Eaton under the name "Ready 4 the World." (Doc # 1, Pg ID 6; Doc # 1-7)

Around June 2017, Ready for the World began to notice advertisements throughout the United States in print, social media, and over the radio, that consisted of Riley and Eaton promoting their shows under the names "Ready for the World"

and "Ready 4 the World featuring Melvin Riley." (Doc # 1, Pg ID 8) On April 20, 2018, Ready for the World, Inc. sent a letter to Atikns, Riley's agent and manager, to cease and desist promoting Riley as "Ready for the World." (*Id.* at 9.) On July 16, 2018, Dixon Kummer, Ready for the World's attorney at the time, sent Defendants a letter demanding that they "cease and desist" from any and all use of the Ready for the World mark. (Doc # 1, Pg ID 9; Doc # 1-12) After Defendants received Kummer's letter, Riley and Eaton proceeded to perform on September 22, 2018, and played many of the hits that were identified with Ready for the World. (Doc # 1, Pg ID 10) Riley's marketing of himself as Ready for the World has led to some confusion regarding who will actually be performing during live performances. (Doc # 1, Pg ID 10; Doc # 1-13)

Since Riley departed from Ready for the World, the group has continued to record and perform under the Ready for the World trademark. (Doc # 1, Pg ID 7) Ready for the World engages in extensive marketing, promotions, and other media to maintain the group's visibility. (*Id.*) To date, Defendants have never asked for, nor obtained permission from Ready for the World, Inc. to use the Ready for the World trademark in connection with their musical endeavors or performances. (*Id.*)

## II.    STANDARDS OF REVIEW

### A. *Rule 12(b)(1)*

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of an action for lack of subject matter jurisdiction. A Rule 12(b)(1) motion for lack of subject matter jurisdiction can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack). *Cartwright v. Garner*, 751 F.3d 752, 759–60 (6th Cir. 2014) (*citing United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994) ).

In the case of a facial attack, the court takes the allegations of the complaint as true to determine whether the plaintiff has alleged a basis for subject matter jurisdiction. *Id.* In the case of a factual attack, a court has broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists, including evidence outside of the pleadings, and has the power to weigh the evidence and determine the effect of that evidence on the court's authority to hear the case. *Id.* Plaintiff bears the burden of establishing that subject matter jurisdiction exists. *DLX, Inc. v. Commonwealth of Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004). In the case of a factual attack, plaintiff carries the burden of establishing subject matter jurisdiction by a preponderance of the evidence. *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936).

**B. *Rule 12(b)(2)***

Plaintiff bears "the burden of establishing the district court's personal jurisdiction" over the Defendant. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d

883, 887 (6th Cir. 2002). As there has been no evidentiary hearing on the matter, the court will "consider the pleadings and affidavits in a light most favorable to the plaintiff." *Compuserve, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996) (citing *Theunissen v. Matthews*, 935 F.2d 1454, 1458-59 (6th Cir. 1991)). Granting a motion to dismiss is only proper "if all the specific facts which the plaintiff ... alleges collectively fail to state a prima facie case for jurisdiction." *Id.* (emphasis in original).

General jurisdiction is satisfied in a forum if the defendant's contacts within that forum are "so constant and pervasive as to render it essentially at home." *Diamler AG v. Bauman*, 134 S. Ct. 746, 751 (2014) (citations omitted). "With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction." *Id.* at 760. Alternatively, personal jurisdiction can be satisfied through specific jurisdiction. Specific jurisdiction "grants jurisdiction only to the extent that a claim arises out of or relates to a defendant's contacts in the forum state." *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 679 (6th Cir. 2012) (citation omitted). Whether a defendant's claim arises out of contacts in the forum is determined applying three criteria. *Southern Machine Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). First, the defendant must "purposefully avail himself of the privilege of acting in the forum state...." *Id.* Second, the "cause of action must arise from the defendant's activities there." *Id.*

Third, the acts of the defendant must demonstrate a "substantial enough connection with the forum state...." *Id.*

## C. *Rule 12(b)(3)*

Federal Rule of Civil Procedure 12(b)(3) provides for a motion to dismiss based on improper venue. "On a motion to dismiss for improper venue, the plaintiff bears the burden of proving that venue is proper." *Audi AG & Volkswagen of Am., Inc. v. Izumi*, 204 F. Supp. 2d 1014, 1022 (E.D. Mich. 2002). A dismissal for improper venue may be based on Rule 12(b)(3), but the requirements for what is a proper venue are established by 28 U.S.C. § 1391(b). *Kerobo v. Southwestern Clean Fuels, Corp.*, 285 F.3d 531, 538 (6th Cir. 2002). The statute reads:

(b) Venue in general.-- A civil action may be brought in--

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

If venue is found to be improper, a district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district . . . in which it could have been brought." 28 U.S.C. § 1406(a).

## III.    Defendants Eaton and Riley's Motions to Dismiss[1]

Defendants Eaton and Riley ask the Court to dismiss Plaintiff's Complaint for lack of subject matter jurisdiction.  Eaton and Riley argue that Counts I-VI of the Complaint should be dismissed because Plaintiff has not pleaded a claim arising under the Lanham Act.  (Doc # 24, Pg ID 254; Doc # 26, Pg ID 270-271)  Both Defendants contend that courts have held that co-owners of a trademark cannot be subjected to Lanham Act claims, and therefore, Eaton and Riley cannot be found liable for infringing on the Ready for the World trademark.  (Doc # 24, Pg ID 254-255; Doc # 26, Pg ID 270-272)  Eaton and Riley mainly cite to *Derminer v. Kramer*, 406 F. Supp. 2d 756, 758 (E.D. Mich. 2005) to support their contention.  (Doc # 24, Pg ID 254-255; Doc # 26, Pg ID 271)  In *Derminer*, the court found that "the language of the statute makes clear that Congress never intended to create a trademark dilution cause of action between owners." *Derminer*, 406 F. Supp. 2d at 758.

---

[1] The Court will consider these Motions together because Defendants Eaton and Riley make the same arguments and Plaintiff has offered the same arguments in response to the Motions.

According to Eaton and Riley, it is undisputed that they are current co-owners of the mark. Eaton and Riley allege that Plaintiff has admitted: (1) that they were members of Ready for the World in 2008; and (2) Ready for the World registered its trademark with the United States Patent and Trademark Office in 2010. (Doc # 24, Pg ID 256; Doc # 26, Pg ID 273) Eaton and Riley contend that these two facts, in combination with their claim that there has not been any transfer of ownership of the Ready for the World trademark, is sufficient for the Court to dismiss Counts I-VI of Plaintiff's Complaint pursuant to *Derminer*. (*Id.*) In their Replies, Eaton and Riley support their claims by providing the Court with their Schedule K-1 forms that show that they both own 16.7 percent of Ready for the World, Inc. (Doc # 43-4; Doc # 44-4)

Riley also disputes the notion that he should not be considered an owner of the Ready for the World trademark because he left the group. (Doc # 24, Pg ID 256) First, Riley argues that Plaintiff cannot show that he left the group or is not a co-owner of the Ready for the World trademark. (*Id.* at 256-257.) Riley alleges that because he was identified as a shareholder on the Shareholder Agreement, it is evident that he is still a member of the band and co-owner of the trademark. (Doc # 24, Pg ID 257) He additionally contends that even if the Court finds that he left the group, since the band Ready for the World is separate from the Ready for the World

trademark, his alleged departure would not affect his ownership interest in the Ready for the World trademark. (*Id.* at 256-257.)

In response, Plaintiff argues that there is no evidence that establishes that Eaton or Riley were co-owners of the Ready for the World trademark. (Doc # 35, Pg ID 453; Doc # 37, Pg ID 550)  Plaintiff contends that "[b]eing a member of a band with a trademarked name is not the same as owning the trademark." (*Id.*) Plaintiff asserts that the Ready for the World trademark is owned by the corporation, Ready for the World, and the fact that Eaton and Riley were *co-founders* of the band does not necessarily demonstrate that they are *co-owners* of the trademark that is at issue. (*Id.*)  Further, Plaintiff argues that Eaton is not an owner of the Ready for the World trademark because he has not executed the corporation's by-laws. (Doc # 37, Pg ID 550; Doc # 37-2, Pg ID 571)  Plaintiff also claims that Riley is not an owner of the Ready for the World trademark, which is evidenced by his failure to execute either the corporation's by-laws or the Shareholders Agreement. (Doc # 35, Pg ID 454; Doc # 37-2, Pg ID 571)

The Court finds that neither Eaton nor Riley can infringe on the Ready for the World trademark.  When the Court ruled in favor of Plaintiff and granted its Motion for Preliminary Injunction, it did not address Defendants' assertion regarding their co-ownership status of the Ready for the World mark and how that might preclude them from facing liability for violating the Lanham Act.  The Court indicated that it

could not evaluate the legitimacy of such a claim because Defendants presented the Court with no evidence that supported their contention. (Doc # 32, Pg ID 324) However, Defendants Eaton and Riley have now adequately demonstrated that they were co-owners. Since Eaton and Riley are co-owners, they cannot be held responsible for their alleged Lanham Act violations since their Schedule K-1 forms, which were based on the 2018 calendar year, demonstrate that they each own 16.7 percent of Ready for the World, Inc. (Doc # 43-4; Doc # 44-4)

Plaintiff's rebuttal consists of arguing that neither Eaton nor Riley have executed Ready for the World's by-laws and that Riley declined to sign the Shareholders Agreement. The Court does not find these arguments to be persuasive. Failure to execute Ready for the World's by-laws and signing the Shareholders Agreement do not prove that Eaton or Riley are not co-owners of the Ready for the World trademark. Plaintiff has previously stated to the Court that Eaton and Riley were part of the group of individuals who incorporated the mark. (Doc # 1, Pg ID 4) Neither neglecting to execute Ready for the World's by-laws, nor declining to sign the Shareholders Agreement demonstrates that Eaton or Riley were no longer co-owners of the mark at issue. Additionally, the fact that Riley left the band is of no consequence. As Plaintiff concedes, the Ready for the World band is a separate entity from the Ready for the World corporation.

Since Eaton and Riley are co-owners of the Ready for the World trademark, Plaintiff cannot pursue its claims against them because Eaton and Riley are entitled to use the Ready for the World trademark without violating the Lanham Act. *See Derminer*, 406 F. Supp. 2d at 758. Accordingly, the Court grants Defendants Eaton and Riley's Motions to Dismiss (Doc # 24; Doc # 26) as to Counts I-VI. Consequently, the Court must also grant Defendants Eaton and Riley's Motions to Dismiss (Doc # 24; Doc # 26) as to Counts VII-VIII because they can no longer be brought forward under supplemental jurisdiction since Eaton and Riley's claims based on the Lanham Act are dismissed. *See* 28 U.S.C. § 1367(c)(2).

## IV.   Defendant Dillman's Motion to Dismiss

Dillman claims that the Court does not have specific jurisdiction over him. According to Dillman, he is a resident of San Leandro, California and has lived there for 19 years. (Doc # 19, Pg ID 165) Dillman has never been a resident of Michigan, does not own or lease any real estate in Michigan, and has never been employed in Michigan. (*Id.* at 166.) Dillman's connection to this case derives from his affiliation with the non-profit organization, San Leandro Curtain Call Performing Arts ("CCPA"). (*Id.* at 165.) Dillman currently serves as the President/Artistic Director of CCPA, which "offers programs and workshops that concentrate on not only artistic performance, but also production, promotion, and management skills relating to these events." (*Id.*) CCPA was formed in California, has its principal place of

12

business there, has never owned or rented any real estate in Michigan, and has never had any directors, employees, or volunteers in Michigan. (*Id.* at 166.)

The connection between Dillman, CCPA, and Plaintiff is based on a concert that was promoted by CCPA and performed by "Melvin Riley & Ready for the World" and took place at the Historic BAL Theater in San Leandro, California on September 22, 2018. (*Id.* at 167.) CCPA entered into an Artist Engagement Agreement ("the 2018 Agreement") with "Melvin Riley & Ready for the World c/o Melvin Riley" dated March 20, 2018. (*Id.*) The Agreement was exchanged via email and was discussed over the telephone. (*Id.*) There were no activities performed by either Dillman or CCPA in Michigan. (*Id.*) The Agreement also contained a choice of law and forum selection clause wherein "Melvin Riley & Ready for the World c/o Melvin Riley" agreed that all disputes with CCPA would be heard in California and governed by California law. (*Id.*)

Dillman additionally mentions that prior to the 2018 concert, CCPA worked with Riley in 2017 when CCPA promoted and produced a Ready for the World concert that transpired at the Historic BAL theater. (*Id.* at 168.) CCPA entered into an Artist Engagement Agreement with Ready for the World in June 2017 ("the 2017 Agreement"). (*Id.*) All contracts in connection with the 2017 Agreement were exchanged via email and were discussed over the telephone. (*Id.*) The production of the 2017 concert did not require Dillman or CCPA to travel or have any

connection with Michigan. (*Id.*) In the 2017 Agreement, Ready for the World agreed to a choice of law and forum selection clause whereby all disputes between Ready for the World and CCPA would be heard in California. (*Id.*)

Currently, Dillman and CCPA do not have any agreements—contractual or otherwise—with Ready for the World. (*Id.* at 169.)

Both parties concede that the Court does not have general jurisdiction over Dillman, and only an assessment of the Court's specific jurisdiction over Dillman is warranted.

Dillman argues that the three-part *Southern Machine* test used by the Sixth Circuit to establish whether specific jurisdiction exists is not satisfied in the instant case. First, Dillman argues that there is no evidence that he—on his own or through CCPA—purposefully availed himself of Michigan. Dillman contends that any alleged infringement transpired exclusively in California, namely the production, promotion, and performance of the 2018 concert. (*Id.* at 173.) Dillman asserts that the only possible connection between this case, as it pertains to either him or CCPA, and Michigan is that the 2018 Agreement was sent by email to Riley, who may have been in Michigan when he received the email. (*Id.*) Dillman argues that this type of a connection is insufficient for the Court to find that the first prong, whether he purposefully availed himself of the privilege of acting in Michigan, has been met

according to *Kerry Steel, Inc. v. Paragon Indus., Inc.,* 106 F.3d 147, 150 (6th Cir. 1997). There, the court found that a Michigan federal district court did not have personal jurisdiction over an Oklahoma company that placed an order for steel coils with a Michigan-based supplier. Prior to forming the contract, the parties negotiated over the phone and by fax between Oklahoma and Michigan, and the defendant sent purchase orders to the plaintiff in Michigan. Dillman argues that the facts in our case are analogous to the facts in *Kerry Steel*.

In response, Plaintiff first argues that Michigan's long-arm statute confers personal jurisdiction over Dillman. More specifically, Plaintiff alleges that under Michigan's long-arm statute, Dillman and CCPA "transacted business in Michigan" when they communicated with Eaton and Riley through email messages and telephone calls to solicit and negotiate their performance at the Historic BAL Theater. (Doc # 33, Pg ID 335) Plaintiff argues that these email messages and telephone calls led to a performance contract in which Dillman and CCPA agreed to compensate Eaton and Riley, who are Michigan residents. (*Id.*) Plaintiff contends that these actions suffice under Michigan's long-arm statute.

Next, Plaintiff argues that Dillman purposefully availed himself of Michigan by promoting the 2018 concert online.[2] (*Id.* at 345.) By promoting the 2018 concert online, Plaintiff claims that Dillman was actively encouraging out-of-state residents to attend the concert. (*Id.*) Plaintiff also relies on the *Calder effects test* to prove that Dillman purposefully availed himself of Michigan. Under the *effects test* established in *Calder v. Jones*, 465 U.S. 783 (1984), Plaintiff must prove: 1) Defendant acted intentionally; (2) Defendant's acts were expressly aimed at the State of Michigan; and (3) the brunt of Plaintiff's injuries were felt in Michigan. *See Am. Pie Pizz, Inc. v. Holton Holdings, Inc.*, No. 2:10-CV-13106, 2011 WL 334272, at *5 (E.D. Mich. Jan. 31, 2011). Here, Plaintiff essentially argues that because the effect of Dillman's alleged infringement on the mark at issue is felt in Michigan, where the trademark owners live, work, and conduct business, Dillman purposefully availed himself of Michigan.

The Court agrees with Dillman for several reasons. First, Michigan's long-arm statute is inapplicable under the circumstances. Michigan's long-arm statute states:

> The existence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise

---

[2] Plaintiff alleges that Dillman sold tickets for Riley's 2018 concert through www.baltheatre.com, www.facebook.com/HistoricalBalTheatre/, and through a separate twitter page. (Doc # 33, Pg ID 345).

limited personal jurisdiction over such corporation and to enable such courts to render personal judgments against such corporation arising out of the act or acts which create any of the following relationships:

(1) The transaction of any business within the state.
(2) The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.
(3) The ownership, use, or possession of any real or tangible personal property situated within the state.
(4) Contracting to insure any person, property, or risk located within this state at the time of contracting.
(5) Entering into a contract for services to be performed or for materials to be furnished in the state by the defendant.

Mich. Comp. Laws § 600.715. Contrary to Plaintiff's assertions, the email and telephone exchanges between Dillman and Eaton and Riley do not constitute any of the five aforementioned relationships that would warrant applying Michigan's long-arm statute.

Second, Plaintiff has not demonstrated that Dillman purposefully availed himself of Michigan. As Dillman explains, not only does he not reside in Michigan, none of his actions that are in relation to the 2018 concert, have any connection with the forum state. The closest connection between Dillman and Michigan is that Riley was in Michigan when he received email messages from Dillman. The Court finds these exchanges do not suffice for purposeful availment purposes.

Third, in regard to Plaintiff's *Calder effects test* argument, the Court finds that contention fails. As courts have explained, recent Supreme Court case law precludes courts from finding that under *Calder*, there can be a personal jurisdiction theory

based on the argument that jurisdiction is proper where a plaintiff felt the effects of a defendant's actions. *See Walden v. Fiore*, 571 U.S. 277, 289-290 (2014); *see Zellerino v. Roosen*, 118 F. Supp. 3d 946, 951 (E.D. Mich. 2015). Therefore, the Court cannot consider Plaintiff's argument.

The Court finds that since Plaintiff has not satisfied the first prong of the *South Machine* analysis, it grants Dillman's Motion to Dismiss for lack of personal jurisdiction. The Court also notes that even if the Court found that Dillman had purposefully availed himself of the privilege of doing business in Michigan, there are no facts that would indicate his cause of action arises from his activities in Michigan, or that his acts demonstrate a substantial enough connection to Michigan to satisfy the *Southern Machine* analysis. *See Southern Machine Co.*, 401 F.2d at 381.

The Court finds that it lacks personal jurisdiction over Dillman, and will not address Dillman's Motion on the basis of improper venue and consequently, his request to transfer venue.

## V.     Defendant Atkins' Motion to Dismiss

Both parties concede that the Court does not have general jurisdiction over Atkins, and only an assessment of the Court's specific jurisdiction over Atkins is warranted.

In Plaintiff's Complaint, it alleges that Atkins is the agent/manager of Riley and regularly transacts business in the State of Michigan. (Doc # 1, Pg ID 2) Atkins disputes this description. Atkins claims that she has never been employed by Riley in any capacity. (Doc # 28, Pg ID 281) Atkins also alleges that she did not book the September 22, 2018 show at the Historic BAL theater and did not have knowledge of the show until a few weeks before the performance. (*Id.*) Atkins argues that she is not a resident of Michigan, and is domiciled in Fairburn, Georgia—where she has lived for the past 13 years.[3] (*Id.* at 281-282.) Further, Atkins asserts that she has no contacts that would subject her to this Court's jurisdiction. (*Id.* at 284.)

Plaintiff argues that Atkins' account of the facts is inaccurate, and jurisdiction exists here due to Michigan's long-arm statute. Plaintiff argues that while Atkins claims that she is not employed by Riley, there is evidence to the contrary. Plaintiff presents the Court with Atkins' various social media posts from March 2018 through November 2018 that show that she has a business relationship with Riley. (Doc # 34, Pg ID 400-401) Plaintiff also offers the Court evidence that Riley has referred to Atkins as his publicist on numerous occasions. (*Id.* at 402.) Plaintiff alleges that Michigan's long-arm statute applies due to the transaction of business between Atkins and Riley within Michigan. Mich. Comp. Laws § 600.715.

---

[3] Atkins does admit that she last lived in Michigan in 1989.

The Court finds that Michigan's long-arm statute does not apply. Even though the Court is convinced that there is a business relationship between Riley and Atkins, Plaintiff has not demonstrated that their alleged transactions of business transpired within Michigan. Plaintiff attempts to argue that for purposes of applying Michigan's long-arm statute, it is sufficient that Atkins communicated with Riley regarding their business relationship while he resided in Michigan. For the reasons set forth above, this line of reasoning is inadequate for the Court to find that Michigan's long-arm statute is applicable.

Next, Plaintiff argues that the Court has specific jurisdiction over Atkins based on the *Calder effects test* since her alleged infringement was *felt* by individuals living in Michigan. For the reasons mentioned above, the Court will not apply the *Calder effects test*. Because Plaintiff has not alleged that Atkins purposefully availed herself of Michigan, the *South Machine* analysis fails. The Court grants Atkins' Motion and need not consider her arguments pertaining to this Court being an improper venue to adjudicate her claims.

## VI.    Land's Motion to Dismiss

Both parties concede that the Court does not have general jurisdiction over Land, and only an assessment of the Court's specific jurisdiction over Land is warranted.

In Plaintiff's Complaint, it alleges that Land is a social media curator for Riley and regularly transacts business in the State of Michigan. (Doc # 1, Pg ID 3) Land disputes this description of him. Land contends that he has not been paid to perform with Riley or promote Riley as "Ready for the World." (Doc # 30, Pg ID 301) Land further claims that he resides in Los Angeles, California and has never resided in Michigan. (*Id.* at 300) Land asserts that he has insufficient contacts with Michigan for the Court to have jurisdiction over him.

Plaintiff argues that Land has offered the Court a false account of the facts, and jurisdiction exists here due to Michigan's long-arm statute. Plaintiff asserts that Land transacted business in Michigan when he performed on various musical recordings and releases with Eaton and Riley in Flint, Michigan. (Doc # 36, Pg ID 509) Plaintiff asserts that Land was formerly on Ready for the World's payroll as the "light man" for the band in the late 1980s to early 1990s, which it claims constitutes a transaction in Michigan because Land was in Michigan during that time. (*Id.* at 508-509.) Plaintiff also argues that Land has utilized all of his social media platforms to promote Eaton and Riley while using the Ready for the World trademark. (*Id.*) Plaintiff alleges that Michigan's long-arm statute applies due to the transaction of business between Land and Riley and Ready for the World within Michigan. Mich. Comp. Laws § 600.715.

The Court finds that Michigan's long-arm statute does not apply. Plaintiff has not offered evidence that there has been a business relationship between Land and either Riley or Ready for the World *in Michigan* that pertains to the use of the mark that is at issue. Therefore, Michigan's long-arm statute is inapplicable.

Plaintiff argues that the Court has specific jurisdiction over Land based on the *Calder effects test* since his alleged infringement was *felt* by individuals living in Michigan. For the reasons mentioned above, the Court will not apply the *Calder effects test*. Because Plaintiff has not alleged that Land purposefully availed himself of Michigan, the *South Machine* analysis fails. The Court grants Land's Motion and will need not consider his arguments pertaining to this Court being an improper venue to adjudicate his claims.

## VII.  CONCLUSION

For the reasons set forth above,

IT IS HEREBY ORDERED that Defendant Melvin Riley's Motion to Dismiss (Doc # 24) is **GRANTED**.

IT IS FURTHER ORDERED that Defendant John Eaton's Motion to Dismiss (Doc # 26) is **GRANTED**.

IT IS FURTHER ORDERED that Defendant Daniel Dillman's Motion to Dismiss (Doc # 19) is **GRANTED**.

IT IS FURTHER ORDERED that Defendant Renee Atkins' Motion to Dismiss (Doc # 28) is **GRANTED**.

IT IS FURTHER ORDERED that Defendant Jan Mark Land's Motion to Dismiss (Doc # 30) is **GRANTED**.

IT IS FURTHER ORDERED that the Preliminary Injunction issued by the Court (Doc # 32) is lifted.

IT IS FURTHER ORDERED that this action is **DISMISSED** with prejudice.


s/Denise Page Hood
Chief Judge, U. S. District Court

DATED:  September 9, 2019